HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| JUNE B. GREINER,<br><br>    Plaintiff,<br><br> v.<br><br>CAMERON WALL, et al,<br><br>    Defendant. | CASE NO. C14-5579RBL<br><br>ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |

  THIS MATTER is before the Court on Defendants' Motion for Summary Judgment [Dkt. #121]. Also pending is Plaintiff's Motion to Certify the Court's July 18, 2016 Order for Interlocutory Appeal [Dkt. #120]. In that Order the Court dismissed all of plaintiff's claims against the individually named defendants pertaining to *executing* the search warrant at plaintiff's home. This follow-up Motion for Summary Judgment deals with the two types of remaining claims: 1) Fourth Amendment claims against Special Agents Guy Gino and Scott McGeachy pertaining to *obtaining* the search warrant; and 2) tort claims against the United States for damage and trespass to property, emotional distress/outrage, and negligent supervision/training. For the reasons set forth below, the Defendants' Motion for Summary

Judgment is **GRANTED** and the remaining claims in the Second Amended Complaint are **DISMISSED** with prejudice.

## I. FACTS

The Department of Homeland Security Investigations ("HSI") identified Jason Hagen as one of the largest distributors of methamphetamine on an online black market known as the Silk Road. Defendant Guy Gino is an HSI Agent and an expert in narcotics-based international money laundering. Agent Gino assembled a team of agents, including IRS Agent Scott McGeachy, from multiple federal and state law enforcement agencies to investigate Hagen. During their investigation, Agents McGeachy and Gino spoke with a confidential informant that claimed knowledge of Hagen and his suspected money laundering. The informant told the agents that Hagen used June Greiner to purchase real estate for him, in her name, with proceeds from Hagen's online methamphetamine distribution. There is no specific evidence that Greiner was a knowing participant in the money laundering.

The agents requested and received a warrant to search for financial documents at Greiner's residence. McGeachy considered the warrant "really low key" because the evidence sought at the Greiner residence was primarily focused on financial records, and because Greiner was low risk.

SA Gino submitted a 57-page affidavit to Magistrate Judge Christel in support of an application for search warrants for four residences, including Plaintiff's. The affidavit describes the multi-agency investigation into the Silk Road on the Dark Net. It details how Jason Hagen and others advertised methamphetamine for sale via the Internet, packaged the methamphetamine in residences and hotel rooms, deposited those packages into the mails, and then converted customers' online payments for the methamphetamine, in the form of virtual

currency known as Bitcoins, into more traditional forms of currency. A federal Grand Jury in the District of Oregon indicted Hagen and others on numerous counts of drug trafficking and money laundering. The 24-page indictment was also attached to the affidavit SA Gino submitted to Magistrate Judge Christel.

In the affidavit, SA Gino informed Magistrate Judge Christel about the confidential informant that was used during the investigation. SA Gino stated that an HSI documented confidential informant, who had proven to be reliable and credible, provided pertinent information regarding Hagen's methamphetamine and money laundering operation. SA Gino disclosed the fact that the CI had an Oregon DUI misdemeanor arrest and an Oregon Assault IV misdemeanor arrest, and that the CI provided information to law enforcement in the interest of receiving consideration as to potential federal drug charges.

The CI worked directly for Hagen as part of his methamphetamine and money laundering operation for several months in mid-2013. SA Gino stated that the information provided by the CI was corroborated by documents provided by the CI, subpoenaed documents, and interviews conducted by law enforcement. SA Gino represented that as of the date of the affidavit, no information provided by the CI was found to be false.

SA Gino also detailed the specific information the CI provided the Agents regarding Plaintiff and Hagen's activities in the affidavit. The CI stated that Hagen used various methods to conceal his illegal internet and drug trafficking activities. The CI stated that Hagen likes to live "off the grid" and will not live at any property that is in his name. The affidavit states:

> The CI further explained that HAGEN owns several properties that are not in his name but in other individuals' names. The CI stated that HAGEN told the CI that he has an "older lady named June" that handles all of HAGEN'S real estate deals. The CI explained he did this because HAGEN likes to "live off the grid."

Thus, the affidavit sought a search warrant for Plaintiff's personal residence because she was identified by the CI as a nominee for Hagen. The affidavit stated that Plaintiff was "identified as a nominee or straw owner for HAGEN that he used to purchase real estate in an attempt to conceal and disguise his ownership interest in the real estate." It further stated:

> [T]he CI told me that HAGEN held his properties in the name of an individual known as "JUNE" [Last Name Unknown]. HAGEN told the CI that he did all his investments through "JUNE" [Last Name Unknown]. The CI also informed me that HAGEN had one house in Ridgefield, Washington, a cottage that his sister resided in, and a third residence at an unknown location.

The affidavit also described how the investigation confirmed the information the CI provided about the properties jointly owned by Hagen and Plaintiff. The investigation identified a residence owned by the "June GREINER Trust" located at 13216 NE Salmon Creek Avenue, NW, Vancouver, WA 98686. The affidavit stated that investigators believed Hagen was the true owner of the Salmon Creek residence because the Bank of America records obtained for the account associated with the residence were in both Plaintiff and Hagen's names. The account was opened on June 2, 2005 and Plaintiff and Hagen both listed their addresses as Plaintiff's personal residence.

SA Gino reviewed the bank statements held in Plaintiff and Hagen's name for March 2012 through July 2013 and all the statements were mailed to Plaintiff's personal residence. Hagen's name was listed on cash deposits into the joint account eight times with each deposit for $200.00 cash. Other deposits into the joint account came from an individual who appeared to rent the Salmon Creek residence.

The affidavit also stated that Hagen's only form of employment during that period of time was from the distribution of methamphetamine. Furthermore, it stated that Plaintiff and Hagen had "a joint bank account [], which appears to be used to collect rent money and pay the

1  mortgage for" the Salmon Creek residence. The account statements were being mailed to
2  Plaintiff's personal residence. The Clark County Assessor's Office listed the current owner of
3  the Salmon Creek residence as "June GREINER Trust" at Plaintiff's personal residence. Finally,
4  the Clark Public Utilities showed that on October 23, 2013, Hagen's mother, who did not reside
5  at Plaintiff's residence, paid the utility bill for that residence in a cash transaction.

6  Based on these facts, it was reasonable for Magistrate Judge Christel to believe Plaintiff
7  may have been used as a nominee to conceal Hagen's activities and assets and there was a "fair
8  probability" that evidence of Hagen's drug trafficking and/or money laundering activities would
9  be found at Plaintiff's residence. As such, the search warrant was supported by sufficient
10  probable cause and this Court will not disturb Magistrate Judge Christel's probable cause
11  determination.

12  The warrant described with particularity the place to search. The warrant described with
13  particularity the persons or things to be seized.

14  **A. Summary Judgment Standard.**

15  Summary judgment is proper "if the pleadings, the discovery and disclosure materials on
16  file, and any affidavits show that there is no genuine issue as to any material fact and that the
17  movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining
18  whether an issue of fact exists, the Court must view all evidence in the light most favorable to
19  the nonmoving party and draw all reasonable inferences in that party's favor. *Anderson Liberty*
20  *Lobby, Inc.*, 477 U.S. 242, 248-50 (1986); *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996).
21  A genuine issue of material fact exists where there is sufficient evidence for a reasonable
22  factfinder to find for the nonmoving party. *Anderson*, 477 U.S. at 248. The inquiry is "whether
23  the evidence presents a sufficient disagreement to require submission to a jury or whether it is so
24  one-sided that one party must prevail as a matter of law." *Id*. At 251-52. The moving party

1  bears the initial burden of showing that there is no evidence which supports an element essential

2  to the nonmovant's claim.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Once the movant

3  has met this burden, the nonmoving party then must show that there is a genuine issue for trial.

4  *Anderson*, 477 U.S. at 250.  If the nonmoving party fails to establish the existence of a genuine

5  issue of material fact, "the moving party is entitled to judgment as a matter of law." *Celotex*, 477

6  U.S. at 323-24.

**B.  The Search Warrant Was Obtained in Compliance With the Fourth Amendment.**

The Fourth Amendment states that "no warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. Amend. IV.  The subject warrant was based on probable cause and was supported by a lengthy and detailed sworn affidavit.  The magistrate judge had a substantial basis for concluding that probable cause existed.  *See United States v. Rodriquez*, 869, F.2d 479, 484 (9th Cir. 1989).

> A magistrate judge's finding of probable cause is entitled to great deference and this court will not find a search warrant invalid if the magistrate judge had a "substantial basis" for concluding that the supporting affidavit established probable cause.  A magistrate judge may issue a search warrant if, under the totality of the circumstances, there is a fair probability that contraband or evidence of a crime will be found in a particular location.

*United States v. Clark*, 31F.3d 831, 834 (9th Cir. 1994) (internal citations omitted); *see also Mills v. Graves*, 930 F.2d 729, 732 (9th Cir. 1991).

The Magistrate Judge's finding of probable cause here is in keeping with the Constitutional requirements enunciated in the Fourth Amendment.

**C.  The IRS Manual Provisions Do Not Control the Manner of Executing the Warrant.**

Plaintiff alleges in her Complaint that agents violated the Internal Revenue Manual ("IRM") when they decided to obtain, use, or execute the search warrant.

A *Bivens* action allows an individual to sue a federal employee for damages for violating an individual's Constitutional rights. *Bivens v Six Unknown Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). In order to maintain a *Bivens* action in federal court, a plaintiff must show that a federal employee violated one of the plaintiff's clearly established Constitutional rights. *See Maraziti v. First Interstate Bank*, 953 F.2d 520, 523 (9th Cir. 1992).

"A necessary concomitant to the determination of whether the constitutional rights asserted by a plaintiff is 'clearly established' at the time the defendant acted is the determination of whether the plaintiff has asserted a violation of a constitutional right at all." *Siegert v. Gilley*, 500 U.S. 226, 231 (1991). A court evaluating a qualified immunity claim must first determine whether the plaintiff has alleged the deprivation of a constitutional right, and, if so, proceed to determine whether that right was clearly established at the time of the violation. *Wilson v. Layne*, 526 U.S. 603, 604 (1999). Thus, a pleading which merely alleges a tort or a violation of agency policy is insufficient to overcome the defense of qualified immunity; the pleading must allege a violation of a constitutional right which was clearly established at the time the defendant is alleged to have acted.

Here, Plaintiff alleges that SA McGeachy (not SA Gino) failed to follow an IRS policy pertaining to "proper use and execution of search warrants." But, even if Plaintiff could prove (a) the policy applied to these Agents under these circumstances, and (b) the Agents violated the policy, it would not constitute a Fourth Amendment violation and is not actionable under *Bivens*. "The failure of the individual federal defendants to 'abide by' the provisions of the Internal Revenue Code, administrative regulations or manual, even if true, would not amount to a constitutional tort." *Jones v. United States*, 869 F. Supp. 747, 751 (D. Neb. Sept. 19. 1994) (*citing Davis v. Scherer*, 468 U.S. 183, 194 (1984) ("Officials sued for constitutional violations

do not lose their qualified immunity merely because their conduct violates some statutory or administrative provision.")).

Plaintiff argues that the IRS Manual directs that search warrants for tax offenses are handled differently than warrants for violent crimes or drug offenses. In tax offenses the harm to the public is lower because violent criminals are not involved and the IRS must consider the safety implication of serving a warrant because it's a dangerous situation for the officers and occupants of the searched premises. The target of this investigation was a drug dealer with networks with the capacity to distribute methamphetamine in every corner of the world. The investigation was led by Homeland Security Agents, not IRS. The scope of the investigation included confederates of Jason Hagen, including June Greiner. This was not a plain vanilla tax offense involving every day citizens cheating on their taxes. The involvement of the IRS agents in a tangential way does not impose upon the entire investigation the strictures of a policy that was meant for an entirely different situation. The money laundering charges detailed in the search warrant affidavit were drug-related charges; not tax evasion charges. Indeed, Hagen was not charged or convicted of any tax-related crime and was not ordered to pay restitution for any past-due taxes. *See United States v. Hagen*, 13-00596-JO, Dkts. No. 1, 133, 182 (USDC OR). There is no mention of tax evasion or any past-due federal taxes in the search warrant affidavit.

**D. The Conduct of the Executing Agents Was Reasonable Under the Circumstances.**

The Agents designated to lead the execution of the search warrant prepared a written search plan that indicated that all normal entry procedures would be conducted, including the use of a traditional "knock and announce" procedure. Agent Wall assembled a team of ten agents to execute the search warrant at the Greiner residence. The agents conducted the knock and announce, waited, and then noticed Greiner's presence inside the residence. The Agents directed Greiner to open the door. The Agents said that Greiner made eye-contact with them, turned, and

retreated from the door. Agent Daniels, after seeing Greiner retreat into the home, then asked Agent Gleason to get the door ram. Both parties agree that Gleason took two swings at the door with the ram, as the first did not breach the door. After the second swing of the ram, the Agents entered the home and found Greiner using the phone. This was the procedure they trained for, planned for and executed the search warrant. Reasonable minds cannot differ on the appropriateness of the execution of the search.

**E. Outrage/Trespass.**

The elements of the tort of outrage are extreme and outrageous conduct, intentional or reckless infliction of emotional distress, and resulting severe emotional distress. *Dicomes v. State*, 113 Wn.2d 612,630, 782 P.2d 1002 (1989). The conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible grounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Grimsby v. Samson*, 85 W.2d 52, 59, 530 P.2d 291 (1975) (quoting Restatement (Second) of Torts § 46 cmt. d (1965)). The court must initially determine if reasonable minds could differ on whether the conduct was sufficiently extreme to result in liability. *Id*. Then the determination of whether the conduct is sufficiently outrageous becomes a question for the jury. *Id*.

In determining whether a case should go to a jury, a trial court considers: (a) the position the defendants occupied; (b) whether the plaintiff was peculiarly susceptible to emotional distress, and if the defendants knew this fact; (c) whether the defendants' conduct may have been privileged under the circumstances; (d) whether the degree of emotional distress the defendants caused was severe as opposed to merely annoying, inconvenient, or embarrassing to a degree normally occurring in a confrontation between these parties; and (e) whether the defendants were aware that there was a high probability that their conduct would cause severe emotional distress,

and they consciously disregarded it. *Phillips v. Hardwick*, 29 Wn. App. 382, 388, 628 P.2d 506 (1981).

Reasonable minds could not differ on whether the conduct was sufficiently extreme to result in liability. Ms. Greiner came to the door and saw a large number of men with clearly marked vests gathered at the door; she retreated back into the house. From a reasonable officer's perspective the fear would be an effort to destroy evidence, tip off a confederate of the search team's presence at her house, or arming herself or another occupant to repel the entrance into the house. The officers were armed with a valid search warrant and they responded to the exigencies of the moment to respond in the manner they planned and they have trained for on countless occasions. They rammed the front door, they entered the residence, they executed the search warrant, nothing less, nothing more. The "trespass" was authorized and accomplished in a reasonable manner.

## II. CONCLUSION

For the foregoing reasons, the Motion for Summary Judgment [Dkt. #121] is **GRANTED** and the remaining claims are **DISMISSED with prejudice.** The Motion for Interlocutory Appeal [Dkt. #120] is **DENIED as moot**.

Dated this 19th day of October, 2016.

Ronald B. Leighton
United States District Judge

ORDER ON DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT - 10