HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JUNE B. GREINER,

        Plaintiff,

v.

CAMERON WALL, et al.,

        Defendants.

CASE NO. C14-5579RBL

ORDER ON DEFENDANTS' MOTION TO EXCLUDE EXPERT TESTIMONY

[DKT. #155]

THIS MATTER is before the Court on Defendants' Motion to Exclude Expert Testimony [Dkt. #155]. The Court has reviewed the material filed for and against this motion. Oral argument is not necessary. For the reasons stated below, the motion is **GRANTED IN PART AND DENIED IN PART**.

**I. FACTS**

Plaintiff Greiner has designated D.P. Van Blaricom as a police practices expert.

On April 6, 2016, Mr. Van Blaricom conducted a reenactment of the events that occurred the morning of December 17, 2013, at Greiner's home. First, he met with Greiner and she described to him the events on the morning of December 17, 2013, from her perspective. Next, Van Blaricom conducted a reenactment consisting of the following: (1) he measured the distance

from the front door, down the hallway, to the desk where Greiner said she was seated that morning; (2) he measured the distance from where he thought the agent with the battering ram was to the front door; (3) he estimated how long it would take for the agent to ram the front door twice; (4) he timed Greiner walking down the hall and recorded the time it took her to get from the desk to the front door and back down the hallway where the agents contacted her; (5) he looked through the window to the right of the door to see what could be seen; (6) he had one of Greiner's attorneys "knock and announce" on the door while he was seated at the desk to see if he could hear it; and (7) he had one of Greiner's attorneys ring the doorbell while he was in the basement to see if he could hear it.

Based on this reenactment, Van Blaricom concluded that it took Greiner 13 seconds to travel from the desk to the door and back to the telephone and that it would have taken the agent 10-15 seconds to breach the door. Van Blaricom opined that Agent Daniels' testimony that Greiner came to the door 30-45 seconds after he knocked and announced, and the agent breached the door within 3-12 seconds thereafter, "could not be explained." Van Blaricom concluded that based on his reenactment there was no knock and announce before agents used the ram to breach the door. Instead, the reenactment was consistent with Greiner's testimony that she heard nothing before the loud noise at her door.

Some of Van Blaricom's opinions based on his reenactment of the event should be excluded because the reenactment was not substantially similar to the events at issue and was not based on any scientific methodology.

## II. DISCUSSION

Under Rule 702, a witness may provide expert testimony if: "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or

to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Civ. P. 702.

In *Daubert v. Merrell Dow Pharmaceuticals, Inc. (Daubert I)*, the Supreme Court explained that an expert may only testify about knowledge "derived from the scientific method" and must avoid "subjective belief or unsupported speculation." 509 U.S. 579, 590 (1993). A theory or technique may be "scientific" if it can be peer-tested, has been subjected to peer review, has an acceptable rate of error and is generally accepted in the relevant scientific community. *Id*. at 583-94. However, the Rule 702 analysis is "flexible" and "[i]ts overarching subject is the scientific validity . . . of the principles that underlie a proposed submission". *Id*. at 594-95.

In addition to reliability, an expert's opinion also must be able to "assist the trier of fact to understand or determine a fact in issue." *Id*. at 592. In other words, the proffered testimony is only admissible if it "logically advances a material aspect of the proposing party's case." *Daubert v. Merrell Dow Pharm., Inc. (Daubert II)*, 43 F.3d 1311, 1315 (9th Cir. 2991). For example, vague assertions about a "statistically significant relationship between [a drug] and birth defects" are not helpful to a trier of fact who must determine whether there is a causal relationship on a more-likely-than-not-basis. *Id*. at 1321.

Expert opinions can serve a variety of functions. Sometimes an expert may be called upon to examine the evidence and apply their expertise to reconstruct the incident. "Whether an expert's accident reconstruction opinions are admissible turns on their experience in the particular field, experience in accident reconstruction, and the basis on which they base their conclusions." *Rodriguez v. JLG Indus., Inc.*, CV11-04586 MMM (SHx), 2012 WL 12882925, at

*9 (C.D. Cal. Oct. 29, 2012) (citing *Sigler v. American Honda Motor Co.*, 532 F.3d 469, 478.79 (6th Cir. 2008). In other situations, an expert may be asked to perform an experiment to support one side's theory of the case. "[E]xperimental evidence falls on a spectrum and the foundational standard for its admissibility is determined by whether the evidence is closer to simulating the accident or to demonstrating abstract scientific principles." *Fireman's Fund Inx. Co, v. Canon U.S.A., Inc.*, 394 F.3d 1054, 1060 (9th Cir. 2005) (quoting *McKnight v. Johnson Controls, Inc.*, 36 F.3d 1396, 1402 (8th Cir. 1994)). "The more experiment appears to simulate the accident, the more similar the conditions of the experiment must be to the actual accident conditions." *Id*.

In his first two reports, Van Blaricom specifically found that experts may not assess credibility and only the fact finder can determine whether Greiner's version or defendants' version of events is true. It was not until his final report, following his reenactment, that he concluded that Greiner's version was correct and "the only option for the times to even come close is if there was no '*knock and announce'*, before the ram was used to breach the door. He testified that he formed this opinion following the reenactment. "I went on my personal experience of visiting the scene, concluded that she was, in fact, correct, and they were, in fact, not correct in this description of all of the facts." Van Blaricom unequivocally testified that his opinion that Greiner's version is correct is based on his reenactment.

Plaintiff argues that Van Blaricom is not a scientific expert and is offering non-scientific expert testimony based only on his observation of the characteristics of Greiner's home, and that he will testify about what a reasonable occupant should have observed during the incident. But Van Blaricom represents that he has "expertise in the police arts and sciences" including "police administration, policies, practices procedures and standards of care; internal investigation and discipline." He does not purport to have any expertise in examining a residence to determine

what can be heard or perceived from inside. There is no evidence that Van Blaricom used any of his police practices expertise, or any scientific methodology in conducting his reenactment to form his opinion that Greiner's version was correct. The reenactment fails under *Daubert* and Van Blaricom should be precluded from testifying about any opinions he formed about the dynamic conditions operating during the subject event.

Greiner argues that Van Blaricom should be able to testify as to the physical conditions he observed at Greiner's home, including the layout of the porch and interior. He should be able to testify as to what a reasonable occupant would perceive from the interior of the home. He should be able to testify as to whether the officers acted reasonably when they broke down Greiner's door. Even if this Court determines that his simulations were reenactments, he should be able to use these simulations to rebut the testimony of Special Agent Daniels.

The Court agrees, in part, with Greiner that Van Blaricom can testify as to the static conditions at the Greiner's home. The measurements of the doorway, the hallway, the distance to the basement, the dimensions of the porch, the location of the doorbell. These facts can be determined by a tape measure. Regarding the dynamic facts of this event are based on sheer speculation, conjecture, or simply vouching for Greiner. This "simulation" is dissimilar from the conditions in effect on the day of the execution of the search warrant. Greiner was in the back of the house with the television on. She heard a sound at the front door. She walked toward the door, stopped and returned to the back of the house. Van Blaricom does not know any of the facts of relative volume of the TV, the doorbell, the announcement and knock of the police officers. Van Blaricom does not know anything about the acuity of Greiner's hearing. And Van Blaricom does not know her reaction to what and when in sequence she heard something and her response time to the stimulus. Did she pause a time to think about what might be happening? Or

did she continue to work at her desk before responding or not responding to what was happening on the porch. Van Blaricom's reenactment or simulation of the ability to hear a knock and announce or the doorbell was not based on any reliable scientific methodology. Greiner can only testify about what she heard, what she did and when she did it.

### III. CONCLUSION

The static conditions at the home are fair game for Van Blaricom's testimony. The dynamic aspect of his testimony: time measurement of certain actions, volume of sounds from the porch or the television, and the sequence of the actual events are not reliable or proper subject of expert testimony. Van Blaricom, as always, can testify from his experience and knowledge about the training of law enforcement officers to properly execute a search warrant.

IT IS SO ORDERED.

Dated this 17th day of January, 2020.

Ronald B. Leighton
United States District Judge