HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| JUNE B. GREINER, a single woman, | CASE NO. C14-5579RBL |
| Plaintiff, | ORDER |
| v. | |
| CAMERON WALL, *et al.*, | |
| Defendants. | |

THIS MATTER is before the Court on Defendants' Motion to Dismiss [Dkt. #154]. Defendants argue that Plaintiff Greiner's *Bivens* claim against them should be dismissed on two grounds: (1) this Court should not extend *Bivens* to a "new context," and (2) most of the defendants are entitled to qualified immunity. The Court has reviewed the law on the evolving standards rising out of *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971) and its progeny, particularly *Zigler v. Abbasi*, 137 S.Ct. 1843 (2017). Based upon the facts and circumstances of this case the motion is DENIED on both counts.

**I. FACTS**

The Defendant IRS Agents were involved in a multi-Agency, complex, national and international investigation of drug trafficking and money laundering. The participating agencies

included Homeland Security, the IRS, the U.S. Postal Service, the Washington County, Oregon Sheriff's Office, the High Intensity Drug Area Interdiction Taskforce, and the Portland Police Bureau. On December 17, 2013, nine Federal IRS law enforcement officers, armed and dressed in SWAT gear, arrived at Greiner's front door to serve and execute a search warrant. They sought to obtain financial records as part of an FBI criminal investigation into a third party. The planning and execution of the search warrant was supposed to follow the training received by all state and federal law enforcement officers.

The Agents serving the warrant received a copy of the approved search warrant plan in the days leading up to its execution. Each attended a pre-operational briefing at the staging location at 6:45 a.m. on December 17, 2013. At the pre-operational briefing, Agent Wall summarized the operational plan, went over contingency plans, and made sure that each Agent knew their role in the service of the search warrant. Agents Mar and Martin began pre-warrant surveillance at Plaintiff's residence at 7:00 a.m. The remaining Agents travelled from the staging location to plaintiff's residence and served the search warrant at approximately 7:30 a.m.

The approved search warrant plan stated that three two-person entry teams would "stack up" on the front door. The first team included Agents Daniels and Crouse. Daniels was designated to "knock and announce," and Crouse was to log the evidence. The second team included Agents Johnson and Cole. Johnson was designated to sketch the residence, and Cole was designated as the evidence custodian/seizing Agent. The third team included Agents Fearn and Gleason. Fearn was designated an interview Agent and Gleason was designated as the photographer. Agents Mar and Ward were assigned to outside cover during service of the search warrant, and they did not "stack up" at the door. Wall was the Team Leader and Martin was to conduct pre-warrant surveillance. Under the plan, "IRS-CI will conduct normal entry procedures.

IRS-CI will conduct a normal knock and announce and will give the occupants of the residence a reasonable amount of time to answer the door. . . . Agent Daniels will knock on the front door and announce police with a search warrant."

This Court dismissed Greiner's claims on summary judgment, and she appealed. The Ninth Circuit reversed, holding that a genuine issue of material fact (whether the agents knocked and announced) required a trial. Defendants now seek dismissal of Greiner's *Bivens* claim *on the pleadings* under Rule 12(c). They argue:

1. Greiner's effort to extend *Bivens* into a "new context" for constitutional remedies is ineffective the Supreme Court's decision in *Ziglar v. Abbasi*, 137 S. Ct. 1843 (2017);

2. Each agent is entitled to qualified immunity because they were "mere bystanders" to Agent Daniel's allegedly unlawful entry; and

3. Greiner's 18 U.S.C. § 3101 "knock and announce" statutory claim must be dismissed because federal employees can only be sued in their individual capacity under *Bivens* for constitutional claims and because the statute provides no private cause of action.

Greiner does not oppose dismissal of her statutory claim because it was already dismissed, but she does point out that 18 U.S.C. § 3101 simply adopts the common and constitutional law describing when a federal law enforcement officers can "break open any outer or inner door" to "execute a search warrant."

## II. STANDARD OF REVIEW

A motion for judgment on the pleadings under Rule 12(c) is "functionally identical" to a motion to dismiss for failure to state a claim under Rule 12(b)(6). *Dworkin v. Hustler*

*Magazine, Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989). The same judicial standard applies to motions brought under either rule. *Cagasso v. Gen. Dynamics C4 Sys.*, 637 F.3d 1047, 1054 n.4 (9th Cir. 2011). The only significant difference is that a Rule 12(c) motion is brought after an answer has been filed, but early enough not to delay trial, whereas a Rule 12(b)(6) motion must be filed before an answer. Fed. R. Civ. P. 12(b)-(c).

In ruling on a Rule 12(c) motion, the Court must assume that the allegations in the challenged complaint are true and construe the complaint in the light most favorable to the nonmoving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996). However, the Court need not accept conclusory legal allegations as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

A motion for judgment on the pleadings is "properly granted when, taking all the allegations in the pleadings as true, the moving party is entitled to judgment as a matter of law." *Nelson v. City of Irvine*, 143 F.3d 1196, 1200 (9th Cir. 1998). Dismissal is "appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).

### III. ARGUMENT

**A. The Facts of this Case Clearly Fall Within the Classic Contour of *Bivens* Jurisprudence.**

In 42 U.S.C. § 1983, Congress provided a specific damages remedy for plaintiffs whose constitutional rights are violated by state officials. Congress provided no corresponding remedy for constitutional violations by agents of the Federal Government. Against this background, in 1971 this Court recognized in *Bivens* an implied damages action to compensate persons injured by federal officers who violated the Court Amendment's prohibition against unreasonable searches and seizures. In the following decade, the Supreme Court allowed *Bivens*-type remedies

twice more, in a Fifth Amendment gender-discrimination case, *Davis v. Passman*, 442 U.S. 228 (1979), and in an Eighth Amendment Cruel and Unusual Punishments Clause case, *Carlson v. Green*, 446 U.S. 14 (1980). These are the only cases in which the Court has recognized an implied damages remedy under the Constitution itself. *Bivens, Davis* and *Carlson* were decided at a time when the prevailing law assumed that a proper judicial function was to "provide such remedies as are necessary to make effective" a statute's purpose. *J.I. Case Co. v. Borak*, 377 U.S. 426, 433 (1964). The Court has since adopted a far more cautious course, clarifying that, when deciding whether to recognize an implied cause of action, the "determination" question is one of statutory intent. *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001).

If a statute does not evince Congress' intent "to create the private right of action asserted," *Touche Ross Co. v. Redington*, 442 U.S. 560, 568 (1979), no such action will be created through judicial mandate. Similar caution must be exercised with respect to damages actions implied to enforce the Constitution itself. *Bivens* is well-settled law in its own context, but expanding the *Bivens* remedy is a "disfavored" judicial activity. *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009).

When a party seeks to assert an implied cause of action under the Constitution, separation-of-powers principles should be central to the analysis. The question is whether Congress or the courts should decide to authorize a damages suit. *Bush v. Lucas*, 462 U.S. 367, 380 (1983). Most often it will be Congress, for *Bivens* will not be extended to a new context if there are "special factors counselling hesitation in the absence of affirmative action by Congress." *Carlson, supra*, 446 U.S. at 18. If there are sound reasons to think Congress might doubt the efficacy or necessity of a damages remedy as part of the system for enforcing the law and correcting a wrong, courts must refrain from creating that kind of remedy. An alternative

remedial structure may also limit the Judiciary's power to infer a new *Bivens* cause of action. *Ziglar v. Abbasi*, 137 S.Ct. 1843, 1854-57 (2017); *see also Hernandez v. Mesa,* ____ S.Ct.____ (2020) 2020 WL 889193.

The proper test for determining whether a claim arises in a new *Bivens* context is as follows. If the case is different in a meaningful way from previous *Bivens* cases, then the context is new. Meaningful differences may include, *e.g.,* the rank of the officers involved; the constitutional right at issue; the extent of judicial guidance for the official conduct; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors not considered in previous *Bivens* cases.

The planning and the execution of the December 17, 2013, Search Warrant hits the sweet spot of Fourth Amendment search and seizure principles that enforce the training of every law enforcement officer in America. The defendants argue that because they are IRS agents, and not some other law enforcement agents who were trained under the same rules, protocols and laws as the IRS agents, they should nevertheless be treated differently. The Ninth Circuit already addressed and rejected the distinction. *Ione v. Hodges*, 939 F.3d 945 (9th Cir. 2019).

**B. Defendants Are Not Entitled to Qualified Immunity.**

If Greiner's allegations are true and well-pled, the question is whether a reasonable officer in the defendants' position would have known the alleged conduct was an unlawful conspiracy. The qualified-immunity inquiry turns on the "objective legal reasonableness" of the officials acts. *Harlow v. Fitzgerald*, 457 U.S. 800, 819 (1982), "assessed in light of the legal rules that were 'clearly established' at the time [the action] was taken," *Anderson v. Creighton*, 483 U.S. 635, 639 (1987). If it would have been clear to a reasonable officer that the alleged conduct "was unlawful in the situation he confronted," *Saucier v. Katz*, 533 U.S. 194, 202, (2001), the defendant officer is not entitled to qualified immunity. But if a reasonable officer

might not have known that the conduct was unlawful, then the officer is entitled to qualified immunity. *Ziglar v. Abbasi*, 137 S.Ct. at 1866 (2017).

The "knock and announce" law has long been clearly-established. If Greiner can establish that individual defendants failed to follow that law, she may pursue *Bevins* actions against those individuals. *Chuman v. Wright*, 76 F.3d 292, 294-295 (9th Cir. 1996).

There are material issues of fact to be resolved by a jury. These include whether the officers gave Greiner the required "notice" (knock and announce) before breaking her front door and entering. If they did not, the jury will have to determine which individual defendant officers knew beforehand of the "audible" to skip that part of the agreed-upon. The record established thus far will not allow the Court to decide these questions in summary fashion. For these reasons, the Defendants' motion on qualified immunity is **DENIED**.

IT IS SO ORDERED.

Dated this 2nd day of March, 2020.

Ronald B. Leighton
United States District Judge