The Honorable Benjamin H. Settle

1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

9    GEORGE JOHNSON,

10              Plaintiff,                    Case No. 3:14-cv-05579-BHS

11         v.                                 **PLAINTIFF'S RESPONSE TO
                                              DEFENDANT'S MOTION TO**
12    CAMERON WALL and JAMES DANIELS,         **DISMISS**

13              Defendants.

14

## I.    INTRODUCTION

On December 17, 2013, Defendants—Internal Revenue Service Special Agents—violently forced entry into 81-year-old June Greiner's home to serve a search warrant limited to documents only. Ms. Greiner was not a suspect in the underlying criminal activity and Defendants knew she posed little risk to officers' safety. The incident left Ms. Greiner deeply shaken—besides having to replace her demolished front door, Ms. Greiner suffered from post-traumatic stress disorder until she died in 2020 at the age of 87.

Ms. Greiner initiated this lawsuit on July 17, 2014, but was unable to outlive the litigation delays or those Agents who caused her to suffer harm for the invasion of her privacy and violation of her constitutional rights. Following her death, Ms. Greiner's family—her Estate—chose to continue pursuing redress for the harm that she suffered.

PLAINTIFF'S RESPONSE TO DEFENDANT'S
MOTION TO DISMISS - 1

LANDERHOLM

805 Broadway Street, Suite 1000
PO Box 1086
Vancouver, WA  98666
T: 360-696-3312 • F: 360-696-2122

1        Defendants now wish to exploit Ms. Greiner's untimely death, seeking dismissal

2 of the Estate's *Bivens* claim merely because Ms. Greiner died before she had her day in

3 court. Fortunately, the law does not support such an unjust result.

4        In *Bivens v. Six Unknown Named Agents*, 403 U.S. 388, 396 (1971), the

5 Supreme Court recognized the importance of a remedial mechanism by which victims

6 of federal constitutional violations by federal agents could recover compensatory and

7 punitive damages. Several years later, the Court held in *Carlson v. Green,* 446 U.S. 14

8 (1980) that where a defendant's conduct results in a plaintiff's death, these critical

9 remedial and deterrent objectives would be undermined if the plaintiff's claims were

10 extinguished, resulting in undeserved *de facto* immunity for the defendant. Finding the

11 state's survivorship statue, which would have abated the lawsuit, contrary to these

12 purposes, the *Carlson* Court chose to apply a uniform federal rule that the representative

13 of such a plaintiff's estate may prosecute a *Bivens* claims on the decedent's behalf.

14        Though Ms. Greiner's death in this case was unrelated to Defendants'

15 unconstitutional conduct, there is no legal or equitable justification to treat her *Bivens*

16 claims any differently than the Plaintiff's in *Carlson*. To the contrary, extinguishing her

17 *Bivens* claims merely because she could not, at the age of 87, outlive this case's

18 abnormally long procedural course would provide Defendants an unjustified windfall

19 and undermine the critical remedial and deterrent justification behind *Bivens*. This is

20 particularly true in cases involving elderly plaintiffs, where such a rule would permit the

21 savvy *Bivens* defendant to "wait out" the plaintiff—a zero-risk, high-reward gambit

22 inconsistent with the purposes underlying the cause of action.

23        It would also run contrary to a significant body of precedential and persuasive

24 decisions from within the Ninth Circuit establishing that compensatory damages

25 available under *Bivens* are an archetypical example of the type of remedial claims that

26 persist beyond a plaintiff's death.

PLAINTIFF'S RESPONSE TO DEFENDANT'S
MOTION TO DISMISS - 2



805 Broadway Street, Suite 1000
PO Box 1086
Vancouver, WA  98666
T: 360-696-3312 • F: 360-696-2122

1    Moreover, notwithstanding the general rule that penal damages allowed by

2 federal *statutes* abate upon a plaintiff's death, the clear import of the Supreme Court's

3 decision in *Carlson* is that punitive damages in the unique context of a *Bivens* claim

4 survive a plaintiff's death as a special remedial sanction crucial to deterring official

5 misconduct. Extinguishing such claims merely because the plaintiff passes away—

6 letting rogue federal official off the hook for their unconstitutional actions—is

7 fundamentally inconsistent with the purposes of *Bivens.*

8    In seeking dismissal of all Plaintiff's remaining claims, Defendants labor against

9 the clear weight of authority. Forced to distinguish a well-established body of

10 precedent, their primary contention is that a sanction with deterrent objectives cannot—

11 *by definition*—also serve remedial purposes.

12    Unsurprisingly, this false dichotomy[1] finds no support in the case law; in fact,

13 the Supreme Court in *Carlson* noted that damages under *Bivens* serve *both* remedial and

14 deterrent functions.[2] In short, Defendants' motion to dismiss must be denied. The relief

15 they seek is foreclosed by decades of precedent, and the principle they embrace would

16 do irreparable harm to the purposes underlying *Bivens* – to redress a grave injustice.

## II.  ISSUES PRESENTED

18    Defendants' motion to dismiss presents these primary issues:

1.    A *Bivens* action allows a plaintiff to recover compensatory and
       punitive damages for violations of their federal constitutional rights
       by a person acting under color of federal law, where there is no
       adequate statutory remedy. Should the question of whether such a
       claim survives the plaintiff's death for reasons unrelated to the
       defendant's conduct turn on federal law, or should courts incorporate
       state law?

2.    Under well-settled federal law, claims that are remedial in nature
       survive a plaintiff's death, whereas those constituting penalties are

---

[1] "[A] rhetorical fallacy that assumes that the choice at hand must be between two options and only two options." False Dichotomy, *Bouvier Law Dictionary* (2012).

[2] "[T]he *Bivens* remedy, *in addition to compensating victims*, serves a deterrent purpose." *Carlson*, 446 U.S. at 21 (emphasis added).

PLAINTIFF'S RESPONSE TO DEFENDANT'S
MOTION TO DISMISS - 3

**LANDERHOLM**

805 Broadway Street, Suite 1000
PO Box 1086
Vancouver, WA  98666
T: 360-696-3312 • F: 360-696-2122

typically extinguished. Under *Bivens*, a plaintiff may be entitled to recover both compensatory (economic and non-economic) damages, as well as punitive damages under federal common law.

   A. Throughout *Bivens* and subsequent decisions, the Supreme Court and lower courts have made clear that compensatory damages are intended to redress individual constitutional injuries and deter official misconduct. Are such damages remedial or punitive in nature, or both?

   B. The Supreme Court has described punitive damages in the specific context of a *Bivens* action as "a particular remedial mechanism. . . especially appropriate to redress the violation by a Government official of a citizen's constitutional rights." Notwithstanding the general rule that punitive claims allowed under penal statutes are extinguished by a plaintiff's death, did the Supreme Court intend punitive damages available under *Bivens* to constitute a special component of the remedial sanctions that would survive a plaintiff's death?

### III. FACTUAL AND PROCEDURAL BACKGROUND[3]

**A. On December 17, 2013, IRS Agents break down Ms. Greiner's door while executing a search warrant**

On the morning of December 17, 2013, 81-year-old June Greiner was enjoying her routine of a quiet morning, drinking coffee and reading the newspaper at her kitchen table (which was in close proximity to her front door) when she was startled by a crashing noise near her front porch, which sounded as though someone had thrown a large, heavy rock against the front wall of her house. *See* Dkt. #99 at ¶ 3.3. When Ms. Greiner approached her front door, she saw several large men clad in dark clothing and huddled around the front door, talking amongst themselves in muffled tones.

Fearing she was about to become the victim of a home invasion, Ms. Greiner immediately turned back toward her dining area to dial 911. *Id.* at ¶ 3.4. But as she

---

[3] The facts underlying this case are set out fully elsewhere in the record before the Court, *see, e.g.*, Dkt. #99, and only those relevant to the issue before the Court and necessary to provide background are repeated here.

PLAINTIFF'S RESPONSE TO DEFENDANT'S
MOTION TO DISMISS - 4



805 Broadway Street, Suite 1000
PO Box 1086
Vancouver, WA 98666
T: 360-696-3312 • F: 360-696-2122

1    turned, Ms. Greiner heard a large crash as the men (whom she later learned were federal

2    agents serving a documents-only search warrant related to an investigation of her

3    former tenant) busted down her front door.

4         Ms. Greiner was able to get to her phone, but before she could tell the

5    emergency dispatcher what was happening, a man, later identified as Defendant Wall,

6    grabbed the phone from Ms. Greiner's hand to prevent her from continuing the call.

7    Only then did the men identify themselves as law enforcement.

8    **B.  On July 14, 2014, Ms. Greiner sues for economic, non-economic, and**

9    **punitive damages**

10        On July 14, 2014,  Ms. Greiner brought suit, alleging claims under *Bivens*

11   against the agents involved in the raid, violations of the federal knock-and-announce

12   statute, 18 U.S.C. § 3109, and claims under the Federal Tort Claims Act. The Court

13   subsequently granted Defendants' motion to dismiss all of Plaintiff's claims, including

14   her *Bivens* claim. *See* Dkt. #120, 128.

15        Plaintiff timely appealed, and on February 7, 2019, the Ninth Circuit vacated the

16   Court's orders dismissing Plaintiff's claims and remanded for trial on the

17   reasonableness of the execution of the search warrant. Dkt. #130. Plaintiff subsequently

18   dismissed her claims against a number of Defendants, leaving her claims against

19   Defendants Wall and Daniels. Dkt. #168.

20   **C.  Ms. Greiner passes away before her case can proceed to trial**

21        Upon remand, trial was reset for July 6, 2020. Dkt. #184. Unfortunately, Ms.

22   Greiner passed away on May 11, 2020 at the age of 87. *See* Dkt. #190. The Court

23   subsequently granted a motion under Rule 25 to substitute Ms. Greiner's son and the

24   personal representative of her Estate, George Johnson, as Plaintiff. Dkt. #190, 192.

25        Defendants now move to dismiss Plaintiff's *Bivens* claims, asserting they were

26   extinguished when Ms. Greiner passed away. *See* Dkt. #196.

PLAINTIFF'S RESPONSE TO DEFENDANT'S
MOTION TO DISMISS - 5



805 Broadway Street, Suite 1000
PO Box 1086
Vancouver, WA  98666
T: 360-696-3312 • F: 360-696-2122

1

2
### IV. LEGAL STANDARD

3
**A.      Motion for Judgment on the Pleadings**

4
A motion for judgment on the pleadings is, in all relevant respects, identical to a

5
motion to dismiss under Rule 12(b)(6). *Merchs. Home Delivery Serv. v. Frank B. Hall*

6
*& Co.*, 50 F.3d 1486, 1488 (9th Cir. 1995). Judgment on the pleadings is only

7
appropriate where, taking all allegations in the plaintiff's complaint as true and drawing

8
all reasonable inferences in the plaintiff's favor, the moving party is clearly entitled to

9
judgment as a matter of law. *Id*; *see also Klarfeld v. United States*, 944 F.2d 583, 585

10
(9th Cir. 1991).

11

12
**B.      A Plaintiff's *Bivens* claims survives their death under both Washington law and the "uniform federal rule of survivorship"**

13
When a party dies in the course of litigation and their underlying claim is not

14
extinguished by their death, Rule 25(a) permits the court to substitute a representative of

15
the decedent's estate as plaintiff.

16
Absent a sufficient federal statutory remedy, a *Bivens* claim provides the

17
exclusive mechanism by which the victim of a federal constitutional violation by a

18
person under acting under color of federal law may recover compensatory and punitive

19
damages. *See Carlson*, 446 U.S. at 18 (citing *Bivens*, 403 U.S. at 396). As a cause of

20
action derived from the federal Constitution and designed to vindicate federal

21
constitutional rights, the metes and bounds of a *Bivens* action necessarily flow from

22
federal law. *Id.* (citing *Burks v. Lasker*, 441 U.S. 471, 476 (1979)).

23
As Justice Brennan expressed in *Bivens,* it should "hardly seem a surprising

24
proposition" that "damages may be obtained for injuries consequent upon a violation of

25
the Fourth Amendment" given t that "[h]istorically, damages have been regarded as the

26
*ordinary remedy* for an invasion of personal interests in liberty." *Bivens,* 403 U.S. at

PLAINTIFF'S RESPONSE TO DEFENDANT'S
MOTION TO DISMISS - 6



805 Broadway Street, Suite 1000
PO Box 1086
Vancouver, WA  98666
T: 360-696-3312 • F: 360-696-2122

397.

In *Carlson v. Green*, the Supreme Court held that where a defendant's allegedly unconstitutional conduct results in a plaintiff's death, claims under *Bivens* survive the plaintiff's death, regardless of the state law, and may be prosecuted by the decedent's estate. *Id.* at 23–25. Recognizing the perverse incentives that would result from a contrary holding—immunizing federal actors from liability where they kill, rather than merely injure—the Court held a uniform rule permitting survival of *Bivens* claims was necessary to effectuate the remedial and deterrent objectives underlying the cause of action. *See id.* at 23 ("Whatever difficulty we might have resolving the question were the federal involvement less clear, we hold that only a uniform federal rule of survivorship will suffice to redress the constitutional deprivation here alleged and to protect against repetition of such conduct.").

Confining its decision to the facts before it, the Court left open the question of whether a plaintiff's *Bivens* claims would survive their death where *unrelated* to the alleged constitutional deprivation. *Id.* at 24 n.11. The Court noted the issue could be resolved in one of two ways: by reference to the relevant state law "as a matter of convenience," *see id.*, or under the federal common law of survival. *See id.* at 23. Ultimately, the Court left the question "for another day." *Id.* at 24 n.11.

Under federal common law, whether a plaintiff's claim persists after her death typically turns on whether the claim in question is "remedial" or "punitive."[4] *See Wheeler v. City of Santa Clara*, 894 F.3d 1046, 1057 (9th Cir. 2018) (citing *Ex parte*

---

[4] Some district courts have observed the rationale behind the remedial vs. punitive dichotomy—that a deceased defendant is beyond punishment—is "not clearly applicable" in cases where the *plaintiff* passes away in the course of litigation, and thus in such cases both forms of damages may be pursued by the plaintiff's estate. *See Haynes v. R. H. Dyck, Inc.*, No. 2:06-CV-02944-MCE-EFB, 2007 WL 3010574, 2007 U.S. Dist. LEXIS 76383, at *8 (E.D. Cal. Oct. 12, 2007). This reasoning is consistent with the underlying compensatory and deterrent objectives of *Bivens*. *See Carlson*, 446 U.S. at 21. Even so, as set forth below, *even if* the Court determines the punitive vs. remedial framework is applicable, Ms. Greiner's claims survive in full, and thus Plaintiff proceeds to discuss the merits of Defendant's motion under the standard set out in *Wheeler*.

PLAINTIFF'S RESPONSE TO DEFENDANT'S
MOTION TO DISMISS - 7



805 Broadway Street, Suite 1000
PO Box 1086
Vancouver, WA 98666
T: 360-696-3312 • F: 360-696-2122

1    *Schreiber*, 110 U.S. 76, 80 (1884)). In making this determination, courts traditionally

2    apply a three-factor test: "(1) whether the purpose of the action was to redress

3    individual wrongs or more general wrongs to the public; (2) whether the recovery runs

4    to the individual harmed or to the public; and (3) whether the recovery was wholly

5    disproportionate to the harm suffered." *Kilgo v. Bowman Transp., Inc.*, 789 F.2d 859,

6    876 (11th Cir. 1986) (citing *James v. Home Construction Co. of Mobile*, 621 F.2d 727,

7    729–30 (5th Cir. 1980)).

8         Following *Carlson*, it appears no Circuit Court of Appeals has considered

9    whether a *Bivens* claims survives a plaintiff's causally unrelated death.[5] At least two

10   district courts within the Ninth Circuit have, however. *See Brunoehler v. Tarwater*,

11   Case No. CV 15-688-DMG (JEMx), 2020 WL 4352790, 2020 U.S. Dist. LEXIS

12   138898 (C.D. Cal. Jan. 31, 2020); *Moss v. Entzel*, Case No. 5:17-cv-02144-PSG

13   (MAA), 2020 WL 869918, 2020 U.S. Dist. LEXIS 27244 (C.D. Cal. Feb. 13, 2020).

14   Both concluded the issue should be resolved under federal common law, and likewise

15   determined compensatory damages under *Bivens* are properly characterized as remedial

16   sanctions. *See Brunoehler*, 2020 WL 4352790 at *1 ("*Bivens* itself suggests it has a

17   remedial purpose." (citing *Bivens*, 403 U.S. at 397)).

18                           **V.  ARGUMENT**

19   A.    **Under either the Washington state statute or Federal uniform survivorship**
           **common law, Plaintiff's Bivens claim survives Ms. Greiner's death.**
20

21        Defendants agree that under Washington's survivorship law, Plaintiff's claims

22   for compensatory damages survive her death.[6]   *See* Wash. Rev. Code § 4.20.046(1)

23   ―――――――――――――――――

24   [5] In *Haggard v. Stevens*, 683 F.3d 714, 716 (6th Cir. 2012), the Sixth Circuit held state law determines the
     survivability of a plaintiff's *Bivens* claim when the *defendant* dies, and is thus inapposite to the issue here.
     [6] With respect to noneconomic damages, Washington law would require the factfinder to determine an
25   award of such damages that was "just under all the circumstances of the case." Id. § 4.20.046(2).
     Washington does not authorize punitive damages unless expressly authorized by statute, and thus whether
26   that component of Ms. Greiner's claims survived her death would necessarily turn on federal common
     law

PLAINTIFF'S RESPONSE TO DEFENDANT'S
MOTION TO DISMISS - 8



805 Broadway Street, Suite 1000
PO Box 1086
Vancouver, WA  98666
T: 360-696-3312 • F: 360-696-2122

1    ("All causes of action by a person. . . against another person . . . shall survive to the

2    personal representatives of the former."). However, in reliance upon *Carlson,*

3    Defendants maintain the federal common law of survival must apply to Plaintiff's

4    *Bivens* claim, largely because applying state law could produce unnecessarily

5    inconsistent results. *See* Dkt. #196 at 10. And as the Supreme Court noted in *Carlson*,

6    there are "cogent reasons" courts may refrain from incorporating state law where the

7    result would be unfair or contrary to the purpose of a *Bivens* claim.[7] 446 U.S. at 24

8    n.11. Specifically, the injury alleged in a *Bivens* action involves federal constitutional

9    rights injured by those acting under color of federal law, and thus "[n]o state interests

10   are implicated by applying purely federal law" to such claims. *Id.*

11        As set out below, Plaintiff's claims—for both compensatory and punitive

12   damages—survive her death under the federal common law. Accordingly, because the

13   result is the same under state or federal law, the Court must deny Defendants' motion to

14   dismiss regardless of which body of law applies, and Plaintiff will proceed under the

15   assumption that federal common law applies.

16   **B.    Greiner's claims for compensatory damages are unquestionably remedial**

17        As set forth above, the determination of whether Ms. Greiner's claims survive

18   her death turns on whether those claims are "remedial," "punitive" or a combination

19   thereof. *Wheeler*, 894 F.3d at 1057. Considering both the plain language of *Bivens* and

20   the nature of such claims in light of the three-part *Kilgo* test, it is clear that claims for

21   compensatory damages under *Bivens* are remedial and thus survive the claimant's death.

22        Start with the language of *Bivens* itself. There, the Court clearly understood

23   itself to be fashioning a remedial mechanism for violations of constitutional rights,

24   rather than a penal scheme designed to vindicate broader societal objectives. *See Bivens*,

25

26   ---
     [7] *Moore's Federal Practice, Civil*, section 25.11 (2020) cites to *Carlson v. Green* in suggesting that "federal common law governs survival of claims for damages against officers of the federal government for violations of federal constitutional rights."

PLAINTIFF'S RESPONSE TO DEFENDANT'S
MOTION TO DISMISS - 9

LANDERHOLM

805 Broadway Street, Suite 1000
PO Box 1086
Vancouver, WA  98666
T: 360-696-3312 • F: 360-696-2122

1    403 U.S. at 396 ("The question is merely whether petitioner, if he can demonstrate an

2    injury consequent upon the violation by federal agents of his Fourth Amendment rights,

3    is entitled to redress *his* injury through a particular *remedial* mechanism normally

4    available in the federal courts." (emphases added)). Buttressing this conclusion, Justice

5    Brennan wrote "[h]istorically, damages have been regarded as the ordinary remedy for

6    an invasion of *personal interests* in liberty." *Id.* at 395 (emphasis added). And later, in

7    *Carlson*, the Supreme Court noted the important deterrent effect of *Bivens* suits, "*in*

8    *addition to compensating victims*." 446 U.S. at 21 (emphasis added). In short, as one

9    district court recently observed, "*Bivens* itself suggests it has a remedial purpose."

10   *Brunoehler*, 2020 WL 4352790 at *1.

11          Applying the three-factor test set out in *Kilgo* yields the same result. First, the

12   purpose of a *Bivens* suit is decidedly to redress individual injuries at the hands of

13   federal agents, rather than to vindicate larger, more diffuse societal interests. *See Kilgo*,

14   789 F.2d at 876; *Carlson*, 446 U.S. at 18 (noting that *Bivens* permits "victims of a

15   constitutional violation by a federal agent. . . to recover damages"). The facts of this

16   case aptly illustrate the point: Plaintiff seeks to vindicate only the individual

17   constitutional injury suffered by Ms. Greiner from Defendants' unconstitutional

18   conduct, rather than some broader interest of the community.

19          Next, recovery on Plaintiff's claims will run directly to the individual harmed,

20   rather than society at large. *Kilgo*, 789 F.2d at 876. In contrast to claims under certain

21   federal statutory regimes (*e.g.*, *qui tam* suits) if Defendants are found liable in this case,

22   Ms. Greiner's estate will recover the full amount of such damages as the jury deems

23   warranted, supporting the conclusion that Plaintiff's *Bivens* claims are remedial. *See id.*

24          Finally, Plaintiff's recovery in this matter will not be "wholly disproportionate

25   to the harm suffered." *Id.* As set out below, Plaintiff maintains Ms. Greiner's claim for

26   punitive    damages    survived    her    death    as    a    special    remedial    sanction.    That

PLAINTIFF'S RESPONSE TO DEFENDANT'S
MOTION TO DISMISS - 10



805 Broadway Street, Suite 1000
PO Box 1086
Vancouver, WA  98666
T: 360-696-3312 • F: 360-696-2122

1    notwithstanding, there is little basis for Defendants to maintain Plaintiff's claims for

2    *compensatory* damages could be disproportionate to the harm Ms. Greiner allegedly

3    suffered as the result of Defendants' actions—indeed, Defendants will presumably

4    demand Plaintiff produce evidence at trial establishing both the validity and extent of

5    Ms. Greiner's injuries, and the factfinder will be tasked with evaluating the sufficiency

6    of that evidence.

7        Defendants do not appear to take issue with any of the preceding analysis.

8    Instead, Defendants contend Ms. Greiner's death extinguished her *Bivens* claims by

9    attempting to stretch the well-settled "remedial vs. punitive" dichotomy to include an

10   additional category—"deterrent"—heretofore absent from any reported decision

11   applying the federal common law of survival. *See* Dkt. #196 at 13–14. Defendants

12   maintain the Supreme Court intended *Bivens* to act as a deterrent to unconstitutional

13   conduct by federal agents, and summarily conclude "[d]eterrence does not serve a

14   remedial purpose." *Id.* at 13.

15       Defendants' argument, including its inherent false dichotomy, finds no support

16   in the case law—indeed, their motion lacks any directly-supporting precedent, instead

17   reasoning by analogy to wholly unrelated areas of federal law. *See* Dkt. #196 at 13.

18   More importantly, the argument that deterrent and remedial purposes are mutually

19   exclusive is directly undermined by the plain language of the Supreme Court's own

20   decisions. For example, the Court in *Carlson* noted "the *Bivens* remedy, *in addition to*

21   *compensating victims*, serves a deterrent purpose." 446 U.S. at 21. Indeed, as the Court

22   there observed, "[i]t is almost axiomatic that the threat of damages has a deterrent

23   effect, surely particularly so when the individual official faces personal financial

24   liability." *Id.* (citation omitted); *see also Bivens,* 403 U.S. at 407–08 (Harlan, J.,

25   concurring in judgment) ("[T]he appropriateness of according [plaintiff] compensatory

26   relief does not turn simply on the deterrent effect liability will have on federal official

PLAINTIFF'S RESPONSE TO DEFENDANT'S
MOTION TO DISMISS - 11



805 Broadway Street, Suite 1000
PO Box 1086
Vancouver, WA 98666
T: 360-696-3312 • F: 360-696-2122

1    conduct. Damages as a traditional form of compensation for invasion of a legally

2    protected interest may be entirely appropriate even if no substantial deterrent effects on

3    future official lawlessness might be thought to result.").

4            In short, there is simply no basis to conclude that compensatory damages

5    available under *Bivens* are anything other than a core remedial sanction that, under well-

6    settled federal common law, survived Ms. Greiner's death. Defendants identify no

7    reported decision—binding or otherwise—supporting a contrary result, and their

8    attempt to depart from the established analytical framework is unavailing. This Court

9    should thus join in the reasoning of at least two others within this Circuit and confirm

10   that Ms. Greiner's *Bivens* claims for compensatory damages survived her death. *See*

11   *Brunoehler*, 2020 WL 4352790; *Moss*, *2020* WL 869918.

**C.   Punitive damages under *Bivens* are a special remedial sanction, as opposed to a penalty, and should also survive the Plaintiff's death**

14           Defendants are also incorrect that Ms. Greiner's claims for punitive damages

15   under *Bivens* were extinguished when she passed away. Although the general rule is

16   that *punitive* sanctions under a penal statute may abate upon a plaintiff's death, the

17   Supreme Court's decision in *Carlson* suggests it intended the punitive damages

18   component of a common law *Bivens* action to be a special remedial remedy that should

19   survive to a plaintiff's estate.

20           The relevant issue before the Court in *Carlson* was whether a *Bivens* action

21   would survive a plaintiff's death caused by the defendant's allegedly unconstitutional

22   conduct—more specifically, whether such a claim would be subject to the federal

23   common law of survival (*i.e.*, that "remedial" claims survive, whereas "punitive" claims

24   typically do not) or to relevant state law. 446 U.S. at 23. In the course of that decision,

25   the Court addressed the availability of punitive damages in a *Bivens* action. *See id.* at

26   22. Drawing on the language of opinion in *Bivens*, the Court held that "[p]unitive

PLAINTIFF'S RESPONSE TO DEFENDANT'S
MOTION TO DISMISS - 12

LANDERHOLM
805 Broadway Street, Suite 1000
PO Box 1086
Vancouver, WA 98666
T: 360-696-3312 • F: 360-696-2122

1   damages are 'a particular *remedial* mechanism normally available in the federal

2   courts,'" and went on to observe that punitive damages are "especially appropriate to

3   *redress* the violation by a Government official of a citizen's constitutional rights." *Id.*

4   (emphases added). [8]

5       The Supreme Court's careful phrasing in *Carlson* strongly implies it intended

6   punitive damages in the unique context of a *Bivens* action to be included among the

7   cause of action's remedial sanctions, and thus to survive a plaintiff's death under the

8   federal common law. *See id.* Indeed, the quoted passage appeared within the very

9   decision in which the Court both acknowledged the federal common law—including the

10  "remedial vs. punitive" dichotomy, which predated the Court's decision, *see James*, 621

11  F.2d at 730 (citing *Murphy v. Household Finance Corp.*, 560 F.2d 206 (6th Cir.

12  1977)—*and* held it was applicable to *Bivens* claims. *See Carlson*, 446 U.S. at 23.

13  Moreover, in concluding a plaintiff's *Bivens* claims should survive, the Court did not

14  parse the remedial vs. punitive distinction, holding simply that *all* the plaintiff's claims

15  may be prosecuted by the estate. *Id.* at 23–25.

16      Moreover, survival of punitive damages claims is consistent with the underlying

17  objectives of *Bivens* and appropriate as a matter of equity. Put simply, there is simply

18  no justification to let a culpable defendant "off the hook" for constitutional wrongdoing

19  simply because they outlive their victim. Indeed, as set out above, courts have

20  recognized the unfairness of such a result, holding the punitive vs. remedial dichotomy

21  inapplicable in cases where the *plaintiff* predeceases the litigation. *See Haynes*, 2007

22  WL 3010574 at *8.

23

---

24  [8] Plaintiff acknowledges that one of the district courts that considered survival of a plaintiff's *Bivens*
    action in this context held that claims for punitive damages are extinguished. *See Brunoehler*, 2020 WL
25  4352790 at *2. However, this decision neither engaged in a robust discussion of the matter nor addressed
    how the Supreme Court's holding in *Carlson* weighed into the analysis. *See id.* As such, Plaintiff
26  respectfully disagrees with this component of the *Brunoehler* court's analysis.

PLAINTIFF'S RESPONSE TO DEFENDANT'S
MOTION TO DISMISS - 13

LANDERHOLM
805 Broadway Street, Suite 1000
PO Box 1086
Vancouver, WA 98666
T: 360-696-3312 • F: 360-696-2122

1    Notably, each of the decisions on which Defendants rely in asserting Ms.

2    Greiner's punitive damages claims abated on her death address federal *statutory* causes

3    of action, such as in the context of the Americans with Disability Act and Title VII of

4    the Civil Rights Act of 1964. *See* Dkt. #196 at 14–16. As such, these cases are all

5    distinguishable from *Bivens* and *Carlson*, in which the Supreme Court—rather than

6    Congress—implied the cause of action directly from the text of the Constitution. *See*

7    *Bivens*, 403 U.S. at 397.

8    In short, the weight of authority supports the conclusion that Ms. Greiner's

9    claims for punitive damages under *Bivens* survived her death. It is the result most

10   consistent with the underlying objectives of such a claim and—more importantly—the

11   result most consistent with the plain language of the Supreme Court's precedents.

### VI.   CONCLUSION

13   Extinguishing a plaintiff's *Bivens* claims based solely on her untimely death

14   makes little sense as a matter of common sense or constitutional jurisprudence and even

15   less a matter of strict adherence to precedent. Indeed, all signs in the Supreme Court's

16   prior decisions support the conclusion that both compensatory and punitive damages for

17   violations of federal constitutional rights survive a plaintiff's death and may be

18   prosecuted by the representative of the plaintiff's estate. Accordingly, Plaintiff

19   respectfully requests the Court deny Defendants' motion in full.

20

21   DATED this 4th day of January, 2020

22                                    */s/ Bradley W. Andersen*
                                      BRADLEY W. ANDERSON, WSBA #20640
23                                    R. BRYCE SINNER, WSBA #42471
                                      805 Broadway Street, Suite 1000
24                                    Vancouver, WA  98666
                                      (360) 696-3312
25                                    Attorney for Plaintiff

26

PLAINTIFF'S RESPONSE TO DEFENDANT'S
MOTION TO DISMISS - 14



LANDERHOLM
805 Broadway Street, Suite 1000
PO Box 1086
Vancouver, WA  98666
T: 360-696-3312 • F: 360-696-2122