1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

GEORGE JOHNSON,

               Plaintiff,

   v.

CAMERON WALL and JAMES
DANIELS,

               Defendants.

CASE NO. C14-5579 BHS

ORDER GRANTING IN PART
AND DENYING IN PART
DEFENDANTS' MOTION FOR
JUDGMENT ON THE PLEADINGS

This matter comes before the Court on Defendants Cameron Wall and James Daniels's motion for judgment on the pleadings. Dkt. 196. The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the file and hereby grants in part and denies in part the motion for the reasons stated herein.

## I.   PROCEDURAL HISTORY AND FACTUAL BACKGROUND

On December 17, 2013, Internal Revenue Service Special Agents served a search warrant at 81-year-old June Greiner's home. Dkt. 99, ¶ 3.3. Greiner alleged that she was drinking coffee and reading the newspaper at her kitchen table when she heard a crashing noise at her front door, as though someone had thrown a large, heavy rock against it. *Id.*

When she went to investigate, she saw several large men "huddled around the front door as though they were trying to break in." *Id.* ¶ 3.4. Believing herself to be the victim of a home invasion robbery, Greiner went to call the police. *Id.* She alleged the agents did not announce themselves before breaking down her door and forcibly entering her home and that Defendant Wall grabbed the phone from her hand before informing her they were law enforcement. *Id.* ¶ 3.5. Grenier asserted that she suffered from post-traumatic stress disorder among other harms as a result of the experience. *Id.* ¶¶ 7.1–7.5.

Greiner filed suit on July 17, 2014. Dkt. 1. Her claims included violation of her Fourth Amendment rights, for which she sought economic, noneconomic, and punitive damages pursuant to *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971). Following two years of litigation, the Court dismissed all her claims. Dkts. 119, 128.[1] Greiner appealed. Dkt. 130. On February 7, 2019, the Ninth Circuit vacated and remanded for further proceedings, holding that Greiner demonstrated a triable issue of material fact as to whether the agents complied with 18 U.S.C. § 3109's requirement that they knock and announce their presence. Dkt. 139. Greiner then dismissed her claims against some Defendants, leaving only Defendants Wall and Daniels. Dkt. 168.

On May 11, 2020, shortly before the case was set for trial, Greiner passed away from causes unrelated to her claim. Dkt. 190. Her son and personal representative of her

---

[1] On August 31, 2020, this case was reassigned from Judge Ronald B. Leighton to the undersigned following Judge Leighton's retirement from the federal bench. Dkt. 191.

estate, George Johnson, was substituted as Plaintiff under Fed. R. Civ. P. 25. Dkts. 190, 192, 194.

On December 17, 2020, Defendants moved to dismiss, asserting that Greiner's claims for damages abated upon her death. Dkt. 196. On January 4, 2021, Plaintiff responded. Dkt. 197. On January 8, 2021, Defendants replied. Dkt. 198.

## II.   DISCUSSION

### A.     Fed. R. Civ. P. 12(c)

"After the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). The pleadings are closed for purposes of Rule 12(c) once a complaint and answer have been filed. *Doe v. United States*, 419 F.3d 1058 (9th Cir. 2005). "Analysis under Rule 12(c) is 'substantially identical' to analysis under Rule 12(b)(6) because, under both rules, a court must determine whether the facts alleged in the complaint, taken as true, entitle the plaintiff to a legal remedy." *Pit River Tribe v. Bureau of Land Mgmt.*, 793 F.3d 1147, 1155 (9th Cir. 2015) (quoting *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012)).

Motions to dismiss brought under Rule 12(b)(6) of the Federal Rules of Civil Procedure may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under such a theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). Material allegations are taken as admitted and the complaint is construed in the plaintiff's favor. *Keniston v. Roberts*, 717 F.2d 1295, 1301 (9th Cir. 1983). To survive a motion to dismiss, the complaint does not require detailed factual allegations but must provide the grounds for entitlement to relief and not merely a

"formulaic recitation" of the elements of a cause of action. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007). Plaintiffs must allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

**B.   Analysis**

The parties dispute whether Greiner's *Bivens* claim abated upon her death. They further dispute whether, if her claim for compensatory damages remains viable, her claim for punitive damages nonetheless abated.

"*Bivens* established that the victims of a constitutional violation by a federal agent have a right to recover damages against the official in federal court despite the absence of any statute conferring such a right." *Carlson v. Green*, 446 U.S. 14, 18 (1980). In *Carlson*, the Supreme Court considered whether a *Bivens* cause of action survived the death of the plaintiff when the death was caused by the alleged violation. *Id*. at 16–17. Specifically, the Supreme Court considered whether a plaintiff bringing suit on behalf of her deceased son's estate, alleging that he suffered injury resulting in death caused by federal prison officials' violation of his due process, equal protection, and Eighth Amendment rights, could sue under *Bivens* rather than the Federal Tort Claims Act and whether survival of the cause of action was governed by federal common law or state statute.

First, the Supreme Court held that the FTCA did not displace *Bivens*. *Id*. at 19–20. Part of its reasoning included four factors "each suggesting that the *Bivens* remedy is more effective than the FTCA remedy, also support our conclusion that Congress did not intend to limit respondent to an FTCA action." *Id*. at 20–21. These factors included that

"the *Bivens* remedy, in addition to compensating victims, serves a deterrent purpose." *Id.*
at 21 (citing *Butz v. Economou*, 438 U.S. 478, 505 (1978) (footnote omitted)). "Because
the *Bivens* remedy is recoverable against individuals, it is a more effective deterrent that
the FTCA remedy against the United States." *Id.* at 21. Additionally, the availability of
punitive damages, "'a particular remedial mechanism normally available in the federal
courts,'" made a *Bivens* action a more effective deterrent than one under the FTCA. *Id.* at
22 (quoting *Bivens*, 403 U.S. at 397).

Second, the Supreme Court adopted the Seventh Circuit's reasoning in concluding
that a uniform federal rule of survivorship was required to redress the constitutional
deprivation and prevent repetition: "'we hold that whenever the relevant state survival
statute would abate a *Bivens*-type action brought against defendants whose conduct
results in death, the federal common law allows survival of the action.'" *Id.* at 23–24
(quoting *Green v. Carlson*, 581 F.2d 669, 674–75 (7th Cir. 1978)). It distinguished
*Robertson v. Wegmann*, 436 U.S. 584 (1978), which held that a § 1983 action could abate
under state survivorship law because that plaintiff's death was not caused by the
constitutional violation. *Carlson*, 446 U.S. at 23–24. It explained that the incorporation of
state survivorship laws in *Robertson* followed 42 U.S.C. § 1988's requirement that
§ 1983 actions be governed by common law as modified by state law in the court of
jurisdiction to the extent consistent with federal law. *Id.* at 24 n.11 It noted, however, that
§ 1988 did not apply to *Bivens* and should not be applied even by analogy because
"*Bivens* defendants are federal officials brought into federal court for violating the
Federal Constitution. No state interests are implicated by applying purely federal law to

them." *Id*. The Supreme Court also commented that "as to other survivorship questions that may arise in *Bivens* actions, it may be that the federal law should choose to incorporate state rules as a matter of convenience. We leave such questions for another day." *Id*. However, as to cases where the violation caused the death of the plaintiff, it was critical that the claim survive to promote the goals of *Bivens* actions. *Id*. at 25 & n.12.

Considering which claims survive the death of a plaintiff, the Ninth Circuit explained in *Wheeler v. City of Santa Clara* that "under federal common law, federal claims typically survive a decedent's death if they are remedial in nature and not penal." 894 F.3d 1046, 1056–57 (9th Cir. 2018) (citing, among others, *Ex parte Schreiber*, 110 U.S. 76, 80 (1884); *Lopez v. Regents of Univ. of Cal.*, 5 F. Supp. 3d 1106, 1119–20 (N.D. Cal. 2013) ("Claims for non-economic compensatory damages in the form of pain and suffering, emotional distress, and the like, are not punitive and therefore survived [plaintiff]'s death.")). Specifically, it evaluated claims brought under the Americans with Disabilities Act and the Rehabilitation Act and concluded that the claims survived because they "are remedial: the goals of both acts were to promote the rights of disabled individuals and to provide compensation when they experienced discrimination." *Id*. at 1057 (citing 42 U.S.C. § 12101; 29 U.S.C. § 701).

In light of these precedents, the parties agree that the Supreme Court has left open whether a *Bivens* claim survives when the alleged violation did not cause the original plaintiff's death. Dkt. 197 at 7; Dkt. 198 at 1. They agree that the federal common law survivorship rule may be appropriately applied to Greiner's claims. Dkt. 197 at 8 & n.6, 9 (asserting Plaintiff's claim for compensatory damages survives under either Washington

survivorship or federal common law; conceding punitive damages not available in

Washington unless specifically authorized by statute so issue turns on federal law); Dkt.

198 at 1; *see also Brunoehler v. Tarwater*, No. CV 15-688-DMG (JEMx), 2020 WL

4352790, at *1–2 (C.D. Cal. Jan. 31, 2020) (applying federal common law to survival of

*Bivens* claims following unrelated death). Moreover, they both contend that *Wheeler*'s

remedial versus punitive frame supports their position. Dkt. 197 at 7 (citing *Wheeler*, 894

F.3d at 1057);[2] Dkt. 198 at 1. Therefore, the Court will consider the compensatory

damages claims followed by the punitive damages claim under these standards.

### 1.    Compensatory Damages

In essence, Defendants' position is that *Bivens* damages serve a deterrent purpose,

deterrence is penal, and thus a claim for *Bivens* damages should not survive the unrelated

death of the original plaintiff. Plaintiff counters that *Bivens* damages are both remedial

and deterrent and should thus survive.

The parties identify three cases addressing these issues more or less directly. First,

they agree that only the Sixth Circuit in *Haggard v. Stevens*, 683 F.3d 714, 716 (6th Cir.

2012), has considered whether a *Bivens* claims survives the casually unrelated death of a

party. However, *Haggard* considered the defendant's death. Plaintiff argues it is thus

inapposite, Dkt. 197 at 8 & n.5, while Defendants emphasize that in applying state law

---

[2] Plaintiff notes that some district courts have found that abating punitive damages on the rationale that a deceased defendant is beyond punishment does not require abating punitive remedies when the original plaintiff dies during litigation. Dkt. 197 at 7 n.4. However, Plaintiff premises his response on the assumption that *Wheeler*'s remedial versus punitive test governs, *see id*. at 9, so the Court will do the same.

1    and finding the claim abated, the Sixth Circuit characterized "the primary goal of *Bivens*

2    [as] deterrence of unconstitutional conduct by federal officers, rather than compensation

3    for violations that do occur," Dkt. 198 at 4–5 (quoting *Haggard*, 683 F.3d at 717).

4         Second, two courts in the Central District of California have recently considered

5    the survivability of *Bivens* damages following the original plaintiff's unrelated death. In

6    *Brunoehler*, the court reasoned that individual damages for economic loss, back pay,

7    front pay, employment benefits, physical injuries, damage to reputation and relationship,

8    emotional distress, and attorney's fees were remedial as they sought to redress individual

9    wrongs and thus survived, but claims for punitive damages were penal and thus abated.

10   2020 WL 4352790, at *2. In *Moss v. Entzel*, the district court considered a motion to

11   dismiss where the plaintiff (proceeding *pro se* and *in forma pauperis* on a *Bivens* claim

12   for violation of his Eight Amendment rights) passed away and no party moved to

13   substitute under Rule 25. No. 5:17-cv-02144-PSG (MAA), 2020 WL 869918, at *2 (C.D.

14   Cal. Feb. 13, 2020). Relying on *Wheeler*, the district court concluded the plaintiff's

15   claims for unnecessary pain, injury, and mental anguish were "not punitive and survived

16   Plaintiff's death under federal common law." *Id.*

17        The Court is not persuaded by Defendants' contention that a deterrence purpose

18   renders a remedy exclusively penal. Defendants cite multiple authorities discussing the

19   deterrent purpose of *Bivens*, but these authorities do not negatively distinguish remedial

20   damages. *See Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 70 (2001) (citing *F.D.I.C. v.*

21   *Meyer*, 510 U.S. 471, 473–74, 485, 486 (1994) ("The purpose of *Bivens* is to deter

22   individual federal officers from committing constitutional violations. *Meyer* made clear

1    that the threat of litigation *and liability* will adequately deter federal officers for *Bivens*

2    purposes . . . .") (emphasis added)); *Meyer*, 510 U.S. at 485 (explaining that the purpose

3    of *Bivens* "is to deter *the officer*" through exposing them to damages actions). Moreover,

4    two of the cases Defendants rely on are entirely outside the context of civil rights or

5    survivorship. *See* Dkt. 198 at 2 (citing *Shearson/American Exp., Inc. v. McMahon*, 482

6    U.S. 220 (1987) (discussing arbitrability of RICO claims)); *Mitsubishi Motors Corp. v.*

7    *Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 636–37 (1985) (considering arbitrability of

8    dispute related to agreement in international commercial transaction)). Defendants also

9    cite *Smith v. Dep't of Human Servs.*, 876 F.2d 832, 836–37 (10th Cir. 1989), which

10   considered liquidated damages under the Age Discrimination in Employment Act and

11   concluded that liquidated damages were penal and to deter conduct and thus abated upon

12   death, but claims for reinstatement and backpay were remedial and survived. Here,

13   Plaintiff seeks compensatory damages in the form of economic damages for property loss

14   and noneconomic damages for emotional distress. Dkt. 99 at 14. These claims are similar

15   to the remedial damages cited favorably in *Wheeler* and *Brunoehler* and unlike liquidated

16   or other penal damages.

17        Moreover, Plaintiff is correct that the compensatory damages sought in this case

18   meet a widely-cited federal common law test to distinguish remedial claims from

19   penalties or punitive claims—they redress individual wrongs and provide individual

20   recovery rather than redressing general harms and providing recovery to the public, and

21   are not "wholly disproportionate to the harm suffered." Dkt. 197 at 8 (quoting *Kilgo v.*

22   *Bowman Transp., Inc.*, 789 F.2d 859, 876 (11th Cir. 1986)); *see also James v. Home*

*Constr. Co. of Mobile*, 621 F.2d 727, 729–30 (5th Cir. 1980). Defendants also concede that in *Ziglar v. Abbasi*, the Supreme Court recently described a *Bivens* remedy as vindicating the Constitution "by allowing some redress for injuries, and it provides instruction and guidance to federal law enforcement officers going forward." 137 S. Ct. 1843, 1856–57 (2017).

Finally, Defendants argue that any remedial purpose of compensatory damages evaporates when the plaintiff is an estate, quoting the Supreme Court's statement that a compensation goal "provides no basis for requiring compensation of one who is merely suing as the executor of the deceased's estate." Dkt. 198 at 3 (quoting *Robertson*, 436 U.S. at 592). While it may be true that a compensatory or remedial goal would not *require* survivability of the claim to the estate, *Robertson* was not decided under federal common law, finding survivability of claims governed instead by state law under § 1988. 436 U.S. at 590. As noted, under federal common law "federal claims typically survive a decedent's death if they are remedial in nature and not penal," *Wheeler*, 894 F.3d at 1056–57. Therefore, the Court agrees with the two other district courts in the Ninth Circuit that the particular remedial claims at issue here should not abate upon the death of the original plaintiff. *Brunoehler*, 2020 WL 4352790, at *1–2; *Moss*, 2020 WL 869918, at *2. Defendants' motion is thus denied as to compensatory damages.

## 2.    Punitive Damages

Plaintiff concedes that the general rule is that punitive sanctions abate upon the original plaintiff's death but argues that "the Supreme Court's decision in *Carlson* suggests it intended the punitive damages component of a common law *Bivens* action to

1   be a special remedy that should survive to a plaintiff's estate." Dkt. 197 at 12. To support

2   this contention, Plaintiff argues language in *Carlson* identifying punitive damages as a

3   "remedial mechanism" which "redress the violation by a Government official of a

4   citizen's constitutional rights" is carefully phrased to imply punitive damage should

5   survive under federal common law. *Id.* at 13 (quoting *Carlson*, 446 U.S. at 22).

6           While *Carlson* did determine that the availability of punitive damages under

7   *Bivens* was a reason to preserve it as a parallel remedy to the FTCA and thereby implied

8   the estate could continue to pursue a punitive damages claim, Plaintiff does not cite any

9   authority after *Carlson* holding that a punitive damages claim survives the death of a

10  plaintiff under federal common law.[3] Plaintiff admits that Defendants cite authority in a

11  variety of statutory contexts finding punitive damages abate under federal common law

12  but contends that, because these cases consider statutory rather than constitutional causes

13  of action, they are distinguishable. Dkt. 197 at 14; *see* Dkt. 196 at 14–16 (citing, among

14  others, *E.E.O.C. v. Marquez Brothers Int'l*, No. 1:17-CV-44 AWI-EPG, 2018 WL

15  3197796 (E.D. Cal. June 26, 2018) (racial discrimination under Title VII); *Fulk v.*

16  *Norfolk S. Ry. Co.*, 35 F. Supp.3d 749, 764 (M.D.N.C. Aug. 4, 2014) (anti-retaliation

17  protections for federal railway workers)).

18

19

20          [3] Defendants cite one case from the Western District of Missouri permitting both
    compensatory and punitive damages under 28 U.S.C. § 1981 to survive under state law *Small v.*
21  *Am. Tel. & Tel. Co.*, 759 F. Supp. 1427, 1431 (W.D. Mo. 1991), but which a district court in the
    Eastern District of Missouri declined to follow as inconsistent with federal common law, *Earvin*
22  *v. Warner-Jenkinson Co.*, No. 4:94 CV 977 DDN, 1995 WL 137437, at *2 (E.D. Mo. Mar. 10,
    1995).

The Court concludes that while Plaintiff makes a credible argument about the implication of the Supreme Court's decision in *Carlson*, those implications are insufficiently certain to displace the federal common law rule as articulated in *Wheeler*. Plaintiff argues that there is no reason to let a culpable defendant escape punitive damages because they happen to outlive their victim, but that is the general federal common law rule. Washington does not permit punitive damages unless specifically authorized by statute, so there is no competing state interest in the survivability of punitive damages claims. And the Supreme Court in *Carlson* both emphasized the importance of uniform federal rules, 446 U.S. at 23, and confined its holding to the specific context of a constitutional violation resulting in death, *id*. at 25 & n.12, which could be interpreted to counsel against an exception to federal common law.

The Supreme Court concluded its opinion in *Carlson* stating "[a] uniform rule that claims such as respondent's survive the decedent's death is essential if we are not to 'frustrate in [an] important way the achievement' of the goals of *Bivens* actions." *Id*. (quoting *Auto Workers v. Hoosier Cardinal Corp.*, 383 U.S. 696, 702 (1966)). "Otherwise, an official could know at the time he decided to act whether his intended victim's claims would survive." *Id*. at 25 n.12. In the event of a violation not resulting in death, this risk is not at issue. Therefore, the Court concludes that the general federal common law rule should apply and that the punitive damages claim abated. Defendants' motion is thus granted as to punitive damages.

# III.  ORDER

Therefore, it is hereby **ORDERED** that Defendants' motion to dismiss, Dkt. 196, is **GRANTED in part** and **DENIED in part**.

Dated this 17th day of February, 2021.

BENJAMIN H. SETTLE
United States District Judge